We will call the cases in the order listed on the calendar. The first case, UNITED STATES v. RUNNER, is submitted on the briefs. The first case for argument is UNITED STATES v. JAMES. Aloha, your honors, and welcome to Honolulu. Thank you. May it please the court, my name is Elizabeth Fisher and I'm appearing for the appellant in this case, Julie James. Would you mind speaking just a little bit while I leave? Okay, do you want me to repeat what I just said? No, I hear that, but if you could just raise your voice a bit. Okay, this is a sentencing case. The issue is not whether the two defendants that we're talking about here, husband and wife, ultimately got the same sentence in terms of months, 37 months, but whether their sentences were fairly arrived at based on their relative culpabilities. As I said, there are two defendants at issue here, even though the indictment involved quite a few defendants. Ms. Fisher, you may want to go to the appealability issue at an early point in your argument, because isn't that something we're going to have to consider? Whether he waived his right to appeal? I don't believe she did waive her right to appeal. I mean, she did have a plea agreement, but what was ultimately... No, I'm just suggesting that we haven't decided, but I think at an early point in your argument, you want to reach that issue, because that is an issue that we're going to have to deal with. Do you agree with that much? Yes. During plea negotiations, Julie, my client, was told that there would be no plea for her if her husband didn't also enter a plea. I'm going to simplify the facts a little bit to make the issue a little bit clearer, if that's all right. The wife is a relatively minor player and ultimately entered a guilty plea to a telephone. Counsel, how do you get around the fact that she waived her right to appeal? What argument are you making to negate the fact that she waived her appeal rights? The argument that she didn't waive her appeal rights, I believe, is based on her understanding of the agreement that was reached with the prosecutor. And if, as we allege in this case, that there were some misrepresentations that led to her entering her plea, that surmounts the waiver. So that's the sole basis upon which you assert that the plea agreement waiver is invalid? Basically. Basically, yes. Exactly what is it that you want to get out of this appeal? I was just curious, because the time's been served, is that correct? She was released in November. She's still on supervised release. Okay, but if it goes back for resentencing, do you think the acceptance of responsibility adjustment would still be applicable? Oh, definitely. She got super acceptance of responsibility. The main issue here is that the husband and wife got different base offense levels for basically one amount of drugs. And it's not a situation where the first pleader, the wife in this case, got the benefit for being the first pleader. Okay, continuing with the line of questioning of Judge Rawlinson, what benefit would you secure in having the sent back for resentencing? What would the effect be? Well, I believe, even though she's already been released from the incarceration point, I think the relief that we asked for in the briefs was that she be given a downward departure to kind of compensate for the unfairness of her sentence. What would that mean practically? What It should mean that her supervisor released with end earlier. How much? Seven months, I believe. What, seven months? Seven months, yes. So that's what this appeal was about? Yes. It sounds like a quibbling amount, but I think the basis for the argument was that there was no base offense level than her husband. Well, you know, logic is not the sole guide in many matters in the law. Yes, Your Honor, but I think when you're looking at whether the guidelines were, or whether her plea was, whether she was fairly convinced in her plea is the issue. But counsel, what case are you looking at to support your argument that if someone is not fairly convinced in his or her plea, that's a basis for It's a basis. It discusses downward departure to equalize sentencing disparity. Okay, so, but that's a different, that's a different issue than you said that she didn't fairly, she wasn't fairly convinced about her plea. And that was, that's a basis for disregarding the waiver of the appeal rights. So now are you saying your argument is that you need to equalize the sentencing, and that's your basis for Not equalize the sentence in terms of months, but equalize the treatment of the defendants, the two defendants. So you're asking us to basically step in and usurp the authority of the U.S. attorney? Well, we, we don't agree, we don't agree that the authority of the U.S. attorney has been, is fairly revealed in these, this conduct. I know that trial counsel believed that that the, the assistant U.S. attorney was biased against his particular clients for whatever reason, and that is not really, that's not a legitimate basis for refusing to, to negotiate a plea. But that's not an issue, is it? I mean, you haven't proved bias, that's not an issue before us, is it? No, I didn't, I didn't raise the issue of bias. I raised it only to the extent that that isn't a rational reason for disparity or discrimination in sentencing. No, but I don't see how this, we're trying to get into that. No, and there doesn't seem to be any other reason. If the, if the application to these two people in the same indictment, basically, is irrational, that would appear to be unfair. So basically, your argument is your client was treated unfairly, so she deserved the downward departure? Basically, yes. And you're relying on DAS for that proposition? For the downward departure part of the argument, yes. Maybe we should hear from the government, and you can state the balance of your time for review. Thank you. Thank you. Good morning, Your Honor. Tom Mueller for the United States. Your Honor, we start this position, or start our position today with the idea that there was nothing wrong with the defendant's plea. You're taking the defendant's plea to leave a telephone to facilitate the conspiracy of, to distribute, and possess with intent to distribute, of 100 grams of heroin. The defendant admitted in the plea agreement that she was aware of the conspiracy, that she was aware that her husband was involved with the drug kingpin in this case, Jorge Salazar-Guillen, who was charged in a related indictment with, I think, 14 other individuals. She admitted that she used the phone to facilitate the conspiracy. She was read to charge under oath. There was nothing wrong with the plea that we took with her, or the sentence that she got. It was fair and equitable. Counsel, where were the elements explained? The elements of the charge in the Rule 11 colloquy, where were those explained? They were not explained in the colloquy, Your Honor. Okay. And why doesn't that then negate the validity of the colloquy if the elements were not explained? Well, I submit to the court that the defendant had the charge read to her. It was explained to her what she had done. The court asked her what she had done. Both the counsel and she said she understood the charge, that she had time to talk about the charge with her client, with her counsel. Her counsel said that he believed she understood the charge, and they don't say that they don't understand the charge. They never raised it. They said that the court didn't read the facts or didn't, excuse me, didn't explain the elements. And that's correct. The record doesn't show that. Our case law seems to be pretty emphatic that the elements need to be explained by the court and asking the attorney and the defendant if they understand this is sufficient to meet the obligation of the judge. There is precedent on that. Yes, Your Honor. We also believe, as the court raised before, that the defendant has given up her right to appeal this case, to bring this appeal. She isn't citing ineffective assistance of counsel. The waiver was explained to her on the record under oath. She answered the trial court's questions at the time of the plea that she understood. She gave up the right to challenge the sentence the way it was computed, the court, unless the court departed above the guideline range, which the court did not. In this case, we submit the defendant has been treated fairly. There is no sentencing disparity. Similarly situated defendants are not really similarly situated. They cooperated with the United States in various trials. They received less sentence or less confinement in those cases. We talk about Melinda Lee Van Etten. We included her sentence. We included Jessica Guzman Soto's sentence. We tried to explain to the court what the deal was in this case. We, at the end of this case, had three defendants left a week before trial. Apparently, the defendant had decided to plead guilty to the telephone count, to go out of the mandatory five-year range and take the telephone count. She and her counsel didn't even show up. She showed up because she was in custody and the marshals brought her. But on the 25th of January, counsel didn't even show up for that hearing. It was Mr. Savage and his attorney, Mr. Kenai, and the government, and Ms. James. The defendant was there. Mr. Wilson didn't show up. Subsequent to that, Mr. Kenai came in and asked to plead to a 99-gram conspiracy count. Knowing what we knew about his defendant, that is, the defendant's husband, Mr. Savage, he had criminal convictions. He had been in custody. We locked him. We kept him locked up. The pretrial services recommended Ms. James stay out on bond. We went along with that. She got in a drug treatment program, completed that program, and then violated the bond with three dirty urinalysis samples, Your Honor, then was locked up. Subsequent to that, at the very last day before trial, when there were three defendants left, and we had gone from 11 defendants to three defendants, we had finished a number of trials. We wanted this case to go away. Based upon what we knew about Mr. Savage, we knew that he had criminal convictions. We believed that the range, and it was an overlapping range that we had between the defendants with that plea, that he would get a higher sentence. When we went to his sentencing, we asked for a higher sentence. We don't say the defendant is a minor player. She was intercepted on the phone only once. But the phone, the wiretap was not on the Savages' or her husband's phone. It was on Jorge Salazar Gillian's phone. And that's where we received a lot of the calls. And the calls we received were between her husband and Mr. Gillian. And she was intercepted once, relaying information, taking a call from Jorge Salazar. We had substantial information and evidence we were willing to put on that she was involved in a 100-gram conspiracy, that it was a 100-gram heroin conspiracy. The co-defendant, unfortunately, the last defendant, took us to trial. He took us to trial on 14 counts. He was convicted of 12 counts before Judge Ray. The same judge that did the sentencing for the defendant did the sentencing for the husband and did the trial of Mr. Pablo Romero. Counsel, was the telephone call that you intercepted of Ms. James, was that the sole evidence you had? No. We had cooperating defendants, Virgil Edward Slott and Warren Brown. Mr. Brown had testified in a couple of cases for us. Mr. Slott had not. Now, they both had baggage, but they were cooperating defendants. And they had placed a hat on Mr. James and, excuse me, Mr. Savage and his wife, the defendant. And the defendant's involvement in helping Mr. Savage distribute heroin that he received from Jorge Salazar. And while the defendant was only intercepted on one telephone call, Your Honor, that was not the evidence we had. We had evidence of her involvement, her involvement repeatedly with her husband in this, well over a 100-gram conspiracy. We simply took, at the last minute, a plea that we thought was appropriate in this case, believing that the guideline range, which did overlap, and it would provide an appropriate sentence for both defendants. And you, in fact, asked for a higher sentence for the husband, but the judge, in his discretion, decided the sentencing. Yes. And up until the morning of sentencing for the husband, his range was higher. His range was a 22. We thought it would be higher based upon his criminal convictions. But his criminal convictions didn't count. They weren't counted. They kept him in a criminal history category one, Your Honor, as was the defendant. The defendant got three points off for super acceptance, because she notifies a few days before trial. We didn't have to prepare transcripts for her of the wiretapped calls, of the wiretapped call. We didn't have to prepare for her for trial. We did for the husband. He didn't get the third point super acceptance. He got two points off. And at the last minute, the morning of sentencing, an addendum to the pre-sentence report was prepared, giving him a range 20, vice a range 20, vice a range 22. And the record, excuse me, the ranges overlapped. Even if the defendant had gotten the two points, downward departure that they asked for, Judge Ray still could have given her 37 months. It was still an appropriate sentence if she'd gone down to a level, down two more points, down to a level 19. The court still could have awarded that. There was no hiding the ball in this case. There was no hiding the ball from Judge Ray in this case. He was the trial court in the co-defendant's case. He took the plea in this case, and he sentenced both the defendant and her husband. Any questions? I gather that you agree that we are looking at a felonary issue in this case. Do you agree with that? Yes. And how would you state the issue that we have to resolve? Well, I submit that sentencing disparity is not a good issue, but they argue there's sentencing disparity. I submit there's no, they haven't reached a level to show a sentencing disparity in this case, or a constitutional violation that resulted in a sentencing disparity. I don't see the issue of the, excuse me, that the court erred in refusing to allow her to withdraw her plea. I don't think that is a viable issue. I'm guessing just the constitutional issue as to sentencing disparity, Your Honor, and how the defendant was treated. I gather from your argument you didn't see that there was a, there is a problem as to what she was advised at the time she entered the plea. No, Your Honor. I gather from your argument. No. Your Honor, these cases. And what cured it? What cured that problem? The potential problem. The potential problem, I think. But it was, is a potential problem because she wasn't advised of the elements. Isn't that so? That's correct, Your Honor. All right. So what cured it? I think the fact that the charge was read to her, the charge was straightforward. She was asked what she had done. She admitted what she was done. Her counsel asked her about the nature of the call that she had. And I submit that she has admitted the elements through her change of plea, colloquy with the court, by answering the questions rather than the questions being given to her. And the advice that was given to her by reading the charge. All right. I don't want to take you beyond your time. But I know. I know, Your Honor. We're happy to answer your questions. Thank you. I think I've addressed what I want to address unless there are questions from any judge. There don't appear to be any. Thank you, counsel. Thank you, Your Honor. Rebuttal. First of all, with Judge Ferris's question about the Rule 11 colloquy, we consider that a basically a reversible error. Counsel, I thought you said previously when I asked you the question, you said the only issue was the fact that she didn't really understand the plea agreement that was offered. Because I asked you specifically, what was your basis for error? And you didn't discuss the plea colloquy issue at all. No, we didn't. And I don't believe we did in the briefing either. Because it's the sentencing disparity, which we're really concentrating on. But I wanted to answer Judge Ferris's question about, in general, the advisements on the nature of the offense and the elements is the core value of Rule 11. And you know, the problem is, Fishhead, and I cannot suggest the court's resolved it. The reason you do it is so that the person who's pleading guilty knows precisely what the person is pleading guilty to. And your opponent says, all right, although that's a potential problem, it's been cured because she didn't know. And the colloquy indicated that. And you said you didn't see that as a primary issue. So maybe that's why. No, we didn't see it as a primary issue and didn't really raise it. But I thought I should respond. Mr. Mulek treats this as a single defendant case when he's talking about her sentence being fair and equitably arrived at. Excuse me, I don't want to interrupt you. But what he's saying is, even if the judge had done what he wanted him to do, he could have still sentenced your client as he did. So what your client is complaining about, if we follow his argument, is not that she got too much, but that her husband didn't get enough. And that's going to be very difficult for us to correct, isn't it? I don't believe so. We're arguing that if her guidelines had been set forth correctly, she would have been subject to a 30 to 37 month sentence. Yes, she could have been sentenced at the high end of the guidelines, which would be 37. But there doesn't seem to be any logical reason for her adjusted offense level, her total offense level, to be higher than Mike's when she had more mitigating factors. All right, counsel, we understand your argument. You've exceeded your time. Thanks to both counsel for your argument. The case just argued is submitted. The next case on calendar for argument is United States v. Mania. I hope I didn't butcher that name too bad.
judges: Silverman, W. Fletcher, Rawlinson